FILED 05 SEP 09 12:43USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

METRO ONE TELECOMMUNICATIONS, INC.,      Civil No. 04-1180-AA
OPINION AND ORDER

    Plaintiff,

vs.

MITSUBISHI ELECTRIC AUTOMATION,
INC.,

    Defendant.

---

Mark A. Turner
Nathan A. Karman
Ater Wynne LLP
222 SW Columbia, Suite 1800
Portland, Oregon 97201-6618
    Attorneys for plaintiff

Jeff S. Pitzer
Pitzer Law
101 SW Main Street, Suite 805
Portland, Oregon 97204
    Attorney for defendant

AIKEN, Judge:

    Defendant moves for summary judgment on all three counts of

plaintiff's complaint. Defendant's motion is granted in part and denied in part.

BACKGROUND

Plaintiff operates a series of call centers around the country, staffed with operators, which provide directory assistance and other information to customers over the telephone. The operation of these call centers requires an uninterruptible source of power. Defendant is one of several companies that sell the uninterruptible power supply ("UPS") systems that ensure non-stop power. Between 1999 and 2002, plaintiff purchased defendant-manufactured UPS systems for 29 call centers it was operating at the time. Plaintiff purchased defendant's UPS systems from a company called Thermal Mechanical, Inc. ("TMI"), a Portland based electrical contractor.[1] TMI then acquired the systems from third party resellers.

In addition to purchasing the UPS systems themselves, plaintiff also purchased, in connection with each UPS transaction, a five-year extended warranty. Plaintiff paid beforehand in full for this extended warranty. These warranties included coverage for preventive maintenance, which consists of on-site visits from technicians to inspect the UPS units and their batteries. Plaintiff alleges that it purchased four visits to each site each year for five years.

---

[1] TMI was formerly a defendant in this lawsuit but is now bankrupt.

Page 2 - OPINION AND ORDER

Plaintiff alleges that its call center in Hawaii "went down" due to a failure of the UPS system. Plaintiff's investigation discovered that defendant had not been performing the preventative maintenance services for which defendant had already been paid. Plaintiff therefore terminated the remainder of the contract terms and requested a refund of its prepaid money for preventative maintenance visits which would have occurred post-termination. Defendant has refused to refund the money to plaintiff.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Substantive law on an issue determines the materiality of a fact. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

## DISCUSSION

Plaintiff (via Everett Schultz) states that it contacted John Witty of TMI to inquire about purchasing a nation-wide UPS system. Witty arranged a meeting with defendant representative Denzil Merrill. Schultz, Witty and Merrill, and representatives from another company "presented as the local sales group for [defendant]" met together for 1 ½ to 2 hours. Schultz Tr., 30-31. Defendant's United States presence was "considered 'other' - meaning that it "was so small that it didn't show up" as compared to other UPS vendors. Merrill Tr., 42-43. Merrill's job as "Regional sales manager for the Western region" was to "establish a UPS rep force." Merrill Tr., 8. After Merrill gave a presentation on defendant's UPS system, he asked, "What can we do to get your business?" Schultz Dec., ¶ 2. Schultz then

discussed plaintiff's expectations for warranty service and what plaintiff had recently been receiving from its existing provider, Liebert, and what plaintiff expected from the next provider. Schultz Tr., 32. Schultz discussed the importance of preventative maintenance ("PM") and that plaintiff expected 4 PMs per year on batteries and 2 PMs per year on UPSs. Id. and Schultz Tr., 34-37. Schultz then gave Merrill a spreadsheet indicating these desired service levels. Schultz Dec., ¶ 2. Schultz also complained about Liebert's poor documentation and how he expected more from the next company. Schultz Tr., 40.

Merrill responded that "they could provide battery replacement and preventative maintenance." Schultz Tr., 35; Witty Tr., 142 ("I would say that Mitsubishi had said that they could provide these services since they are in the business of doing that."). Merrill specifically stated that he "did not see any problem with providing [plaintiff] the same type of service [plaintiff] was purchasing before." Schultz Tr., 45. Merrill suggested that "they would draft up a document to let [plaintiff] choose the type of preventative maintenance." Schultz Tr., 45. Merrill stated that "they [defendant] had a standard, but they knew what [plaintiff] wanted, so they would tailor a document for that." Schultz Tr., 48. TMI sent Schultz a sheet showing that plaintiff would receive the levels of service the spreadsheet he gave to defendant detailed. Schultz Tr., 54-56; Schultz Dec., ¶

3.

Plaintiff decided to work with defendant. TMI began issuing proposals to plaintiff stating: "We at Thermal Mechanical and Mitsubishi Electronics look forward to working with your Company. If there is anything further that we can do for Metro One Telecommunications, please let us know." Defendant's Concise Statement of Material Facts, ¶ 12, Ex. 5. The first proposal accepted by plaintiff was for the Beaverton, Oregon site. This provided for 4 PMs per year on batteries and 2 PMS per year on UPSs. Karman Dec., ¶ 5, Ex. 4. Subsequent sites often referred to PMs generally. See id., ¶ 6, Ex. 5 ("plus preventative maintenance"). According to plaintiff, there was no intervening discussion about changing the PM levels. Schultz Dec., ¶ 3. The warranty service at certain sites also incorporated a battery replacement service. Defendant's Concise Facts, ¶8.

Plaintiff prepaid for the PMs and the battery replacement service. Schultz Dec., ¶ 5. Plaintiff ultimately accepted 29 proposals within this account. Defendant's Concise Facts, ¶ 2.

In May 2002, when plaintiff's Hawaii site "lost power and the UPS was down," a defendant Service Manager confirmed that in "one battery cabinet there was an open fuse and in the other cabinet, there was one bad battery. The combined effect is that the UPS had no battery to support that load during the power failure." Karman Dec., ¶ 8, Ex. 7. The Hawaii site had been

started in 1999, and defendant had not performed any PM there. Schultz Dec., ¶ 10, Ex. 4; Witty Tr., 33, 103 (Mitsubishi had not done a service on Honolulu in two plus years").

Plaintiff alleges that it suffered substantial damage as a result of the Honolulu and other defendant failures. Specifically, plaintiff processes calls through these sites and gets paid per call. When the power went down, plaintiff could not process these calls. Further, plaintiff had to pay an additional fee for repairs to the equipment which failed as a result of the maintenance that, though contracted for, had not been performed. Finally, when plaintiff lost power in Honolulu, it failed to meet the contractually required service level standards of availability and the customer became extremely upset. The customer ended up severing its business relationship with plaintiff.

After the Honolulu failure, plaintiff began to investigate the frequency of PMs throughout its national network. Plaintiff demanded documentation of PMs from TMI. TMI was able to provide little documentation, but said that it was working on obtaining it. TMI ultimately learned that though "maintenance services were to be provided by Mitsubishi in a timely manner. . . there [were] certain sites that were not getting their services on time." Witty Tr., 106-07.

Plaintiff then paid a different company to check on all of

the batteries. Schultz Tr., 184-85. That company "found some sites that drastically needed battery replacement" and noticed that the "batteries had been swelling [and] residue was all over the cabinets." Id. When plaintiff still had not received additional reports from TMI, and after plaintiff received a notice from defendant indicating that it had no preventative maintenance contract in place, plaintiff contacted defendant directly. Schultz Dec., ¶¶ 7,8. Schultz asked defendant for documentation showing what PM defendant had performed on the sites for which it was responsible. Karman Dec., ¶ 9, Ex. 8. Defendant sent Schultz two copies of the same PM report. Schultz Dec., ¶ 8. Schultz wrote, "I'm sorry I expected more than this for PM reports for the last four years that I have had Mitsubishi equipment. Is this a mistake or is this all that had been done?" Defendant's representative, Tammy Walsh, responded, "Yes I do believe that is about it." Karman Dec., ¶ 9, Ex. 8. Defendant then sent plaintiff spreadsheets discussing the sites for which it was responsible and indicating its purposed service obligations. Schultz Dec., ¶ 10, Ex. 4; Karman Dec., ¶ 17, Ex. 16. Plaintiff states that these purported obligations fell far below what defendant represented at the initial sales meeting. Moreover, defendant was unable to substantiate even that these services had been performed. Schultz Dec., ¶ 11.

Plaintiff filed the lawsuit at bar against the defendant

alleging a breach of contract, violation of Oregon's Unfair Trade Practices Act ("UPTA") by misrepresenting the type and quality of maintenance service that plaintiff had purchased, and claim for unjust enrichment.

Regarding plaintiff's claim for breach of contract, defendant asserts that plaintiff never entered into a contract with defendant, either written or oral, and that plaintiff purchased UPS units and extended warranties from TMI. I find that a question of material fact exists as to whether TMI had apparent authority for defendant and therefore whether its actions bound defendant. To establish a third party's apparent agency, plaintiff must show that: (1) the principal provided information that was either intended to cause plaintiff to believe that the purported agent is authorized to act on its behalf, or the principal should have realized that its conduct was likely to create such a belief; and (2) from the information provided by the principal, or from the conduct of the principal, the plaintiff reasonably believed that the purported agent was authorized to act for the principal. Badger v. Paulson Investment Co. Inc., 311 Or. 14, 25, n.9, 803 P.2d 1178 (1991)(internal quotation omitted).

"An agency may be implied from attending circumstances, and the apparent relations and conduct of parties." Durham v. Warnberg, 62 Or. App. 378, 660 P.2d 208 (1983). The question of

apparent agency is generally "one of fact for the jury." Miller v. D.F. Zee's, Inc., 31 F.Supp.2d 792, 806 (D. Or. 1998)(finding "sufficient evidence to create a material issue of fact" relating to apparent authority). A principal is liable for the acts of an apparent agent even when the principal "did not [actually] authorize or justify or participate in, or indeed know of such misconduct, or even if he forbade the acts or disapproved of them. White v. Gordon, 130 Or. 139, 143, 279 P. 289 (1929).

Defendant argues that its failure to specifically call TMI an "agent" or "representative" in the meetings with Schultz and Witty precludes a finding of apparent authority. I disagree. The relevant inquiry here is whether the principal acts in a way to cause a reasonable belief of agency. This involves a question of fact appropriately resolved by a jury. See Rattey v. Tri-County Metropolitan Transportation District, 2000 WL 1335052, *3 (D.Or. 2000)(denying motion for summary judgment because whether a belief was reasonable involves a question of fact for the jury). See also, Rough & Ready Lumber Co. v. Blue Sky Forest Products, 105 Or. App. 227, 232 n.1, 804 P.2d 498 (1991)(notwithstanding testimony indicating plaintiff did not consider party an agent, plaintiff's belief "is a question of fact for the jury").

Merrill, at the meeting arranged by Witty, had to convince plaintiff that defendant could provide warranty services,

including PMs, in a manner superior to Liebert, plaintiff's service provider at the time. There are factual disputes surrounding the promises and representations that Merrill made in order to convince plaintiff that defendant could provide those services. There are factual disputes surrounding Merrill's subsequent communications with plaintiff in terms of using the term "we" and whether the group was presented as a team. There is evidence that during this meeting that Witty of TMI hardly spoke at all. Plaintiff argues that when it later accepted proposals issued by TMI - proposals stating that "We at Thermal Mechanical and Mitsubishi Electronics look forward to working with your Company" and asking if there is anything "further that we can do for Metro One" - plaintiff believed that TMI acted as defendant's agent. Schultz Dec., ¶ 4. Whether plaintiff's belief was reasonable is a question of fact for the jury. Therefore, defendant's motion for summary judgment on plaintiff's breach of contract claim is denied.

Plaintiff's second claim for relief is for unjust enrichment. To establish this claim, plaintiff must show that (1) plaintiff conferred a benefit on defendant; (2) defendant was aware that it received a benefit; and (3) under the circumstances it would be unjust for defendant to retain the defendant. Volt Services Group v. Adecco Employment Services, Inc., 178 Or. App., 121, 35 P.3d 329 (2001). Defendant does not dispute that

plaintiff conferred a benefit, or that defendant was aware of the benefit. Defendant does, however, dispute that its retention of the money would be unjust. Plaintiff asserts that factual questions exist as to whether it is unjust for defendant to retain the money for past-due services that it allegedly never performed; or whether it is unjust for defendant to retain money for services arising after plaintiff demanded a refund and terminated the relationship. I find that this claim cannot be resolved until plaintiff's first claim for breach of contract is resolved. There remains many disputed issues of material fact surrounding exactly what services, if any, were promised or contracted by defendant to the plaintiff; how those services were performed; and whether plaintiff had a right to cancel its prepaid warranties early and obtain a full refund, or had any obligation to exhaust its remedies or accept any purported offers to cure. Therefore, defendant's summary judgment motion to dismiss plaintiff's claim for unjust enrichment is denied.

Finally, as to plaintiff's claim under the UTPA, defendant's motion for summary judgment is granted. Plaintiff does not oppose defendant's motion and defendant's motion is legally justified. Plaintiff is not a consumer under the UTPA and all transactions at issue in plaintiff's complaint fall outside the scope of the UTPA. Searle v. Exley Express, Inc., 278 Or. 535, 539, 564 P.2d 1054 (1977); Or. Rev. Stat. 647.605(6).

## CONCLUSION

Defendant's motion for summary judgment (doc. 10) is granted in part and denied in part. Defendant's motion is denied as to plaintiff's claims for breach of contract and unjust enrichment, and granted as to plaintiff's claim under the Oregon Unfair Trade Practices Act. Further, defendant's request for oral argument is denied as unnecessary.

The parties are encouraged to contact this court to schedule a settlement conference in this matter.

IT IS SO ORDERED.

Dated this 8 day of September 2005.

*Ann Aiken*
Ann Aiken
United States District Judge

Page 13 - OPINION AND ORDER